IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

GREGORY C. LANGHAM
CLERK OF COURT

Room A-105, Alfred A. Arraj U.S. Courthouse
901 19th Street
Denver, Colorado 80294-3589
Phone (303) 844-3433
www.cod.uscourts.gov

April 19, 2011

United States Courthouse
312 North Spring Street, Room G-8
Los Angeles, CA 90012-4701



Colorado Case Number: 11-mj-01056-KLM
Receiving Court Case Number: CR10-1236 -R-7
Marlon Parris

Dear Clerk:

The above numbered case has been ordered transferred to your district pursuant to order of court.

You may access electronically filed documents in this case at our ECF/PACER web address http://ecf.cod.uscourts.gov. Any documents not available electronically are enclosed in paper format.

Please acknowledge receipt by returning a date stamped copy of this letter noting the case number in your court in the enclosed envelope.

Very truly yours,
Gregory C. Langham, Clerk

By: s/R. Mason
      Deputy Clerk

TERMED

# U.S. District Court
## District of Colorado (Denver)
## CRIMINAL DOCKET FOR CASE #: 1:11-mj-01056-KLM All Defendants
## Internal Use Only

Case title: USA v. Parris
Other court case number: CR10-1236 Central
District of CA

Date Filed: 04/14/2011
Date Terminated: 04/19/2011

Assigned to: Magistrate Judge
Kristen L. Mix

### Defendant (1)

**Marlon Parris**
*TERMINATED: 04/19/2011*

represented by **Matthew C. Golla**
Office of the Federal Public
Defender
633 Seventeenth Street
#1000
Denver, CO 80202
303-294-7002
Fax: 303-294-1192
Email: Matt_Golla@fd.org
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or
Community Defender
Appointment*

### Pending Counts

None

### Disposition

### Highest Offense Level
### (Opening)

None

### Disposition

### Terminated Counts

None

### Disposition

## Highest Offense Level
## (Terminated)

None

| Complaints | Disposition |
|---|---|
| 21:846=CD.F Conspiracy to distribute cocaine, 18:1956-3100.F Money laundering | |

## Plaintiff

**USA**                    represented by    **Kasandra R. Carleton**
U.S. Attorney's Office-Denver
1225 17th Street East
Seventeenth Street Plaza
#700
Denver, CO 80202
303-454-0100
Fax: 303-454-0403
Email:
Kasandra.Carleton@usdoj.gov
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/19/2011 | 9 | MAGISTRATE CASE TERMINATED as to Marlon Parris by Magistrate Judge Kristen L. Mix on 4/19/2011. (romsl, ) (Entered: 04/20/2011) |
| 04/19/2011 | 8 | Removal Documents Sent To the Central District of California (romsl, ) (Entered: 04/20/2011) |
| 04/19/2011 | 7 | COMMITMENT TO ANOTHER DISTRICT as to Marlon Parris. Defendant committed to District of Central District of California by Magistrate Judge Kristen L. Mix on 4/19/2011. (romsl, ) (Entered: 04/20/2011) |
| 04/19/2011 | 6 | WAIVER of Rule 5 & 5.1 Hearings by Marlon Parris (romsl, ) (Entered: 04/20/2011) |
| 04/19/2011 | 5 | Minute Entry for proceedings held before Magistrate Judge Kristen L. Mix: Preliminary, Identity and Detention Hearing as to Marlon Parris held on 4/19/2011. Pretrial Veronica Ramirez. Defendant waives preliminary, identity and detention hearings requesting they be held in charging |

CM/ECF - U.S. District Court:cod                                Page 3 of 3
Case 2:10-cr-01236-SVW   Document 159   Filed 04/25/11   Page 4 of 38   Page ID
#:785

| | | |
|---|---|---|
| | | district. Defendant remanded, to be transported to charging district. Total time: 2 minutes. TEXT ONLY ENTRY - NO DOCUMENT ATTACHED. (FTR: KLM AM) (romsl, ) Modified on 4/19/2011 to correct text (romsl, ). (Entered: 04/19/2011) |
| 04/15/2011 | 4 | NOTICE OF ATTORNEY APPEARANCE: Matthew C. Golla appearing for Marlon Parris (Golla, Matthew) (Entered: 04/15/2011) |
| 04/14/2011 | 3 | Sealed Document-Financial Affidavit-defendant Marlon Parris (romsl, ) (Entered: 04/15/2011) |
| 04/14/2011 | | (Court only) ***LC Location start as to Marlon Parris (romsl, ) (Entered: 04/14/2011) |
| 04/14/2011 | 2 | Minute Entry for proceedings held before Magistrate Judge Kristen L. Mix: Initial Appearance in Rule 5(c)(3) Proceedings as to Marlon Parris held on 4/14/2011. AUSA Kasandra Carleton; Defendant present in custody without counsel; Pretrial Veronica Ramirez. Defendant advised. Federal Public Defender appointed. Preliminary, Identity and Detention Hearing set for 4/19/2011 10:00 AM in Courtroom C204 before Magistrate Judge Kristen L. Mix. Defendant remanded. Total time: 10 minutes. TEXT ONLY ENTRY - NO DOCUMENT ATTACHED. (FTR: KLM PM) (romsl, ) (Entered: 04/14/2011) |
| 04/14/2011 | 1 | RULE 5 AFFIDAVIT as to Marlon Parris from the Central District of California. (tllsl, ) (Entered: 04/14/2011) |

AO 466A (Rev. 01/09)  Waiver of Rule 5 & 5.1 Hearings (Complaint or Indictment)

# UNITED STATES DISTRICT COURT
### for the
### District of Colorado

| | | |
|---|---|---|
| United States of America | ) | Case No. 11-mj-01056-KLM |
| v. | ) | |
| | ) | |
| HARLON Parris | ) | Charging District's Case No. C R10-1236 |
| _____ | ) | |
| Defendant | ) | |

## WAIVER OF RULE 5 & 5.1 HEARINGS
### (Complaint or Indictment)

I understand that I have been charged in another district, the *(name of other court)* Central Dist. of CA.

I have been informed of the charges and of my rights to:

(1)     retain counsel or request the assignment of counsel if I am unable to retain counsel;

(2)     an identity hearing to determine whether I am the person named in the charges;

(3)     production of the warrant, a certified copy of the warrant, or a reliable electronic copy of either;

(4)     a preliminary hearing within 10 days of my first appearance if I am in custody and 20 days otherwise — unless I am indicted — to determine whether there is probable cause to believe that an offense has been committed;

(5)     a hearing on any motion by the government for detention;

(6)     request transfer of the proceedings to this district under Fed. R. Crim. P. 20, to plead guilty.

I agree to waive my right(s) to:

☐     an identity hearing and production of the warrant.

☐     a preliminary hearing.

☐     a detention hearing.

☑     an identity hearing, production of the warrant, and any preliminary or detention hearing to which I may be entitled in this district.  I request that those hearings be held in the prosecuting district, at a time set by that court.

I consent to the issuance of an order requiring my appearance in the prosecuting district where the charges are pending against me.

Date:   4/19/11

x _____
*Defendant's signature*

_____
*Signature of defendant's attorney*

Mart Gold
*Printed name of defendant's attorney*

AO 94  (Rev. 06/09) Commitment to Another District

# UNITED STATES DISTRICT COURT
### for the
### District of Colorado

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No.   11-mj-01056-KLM |
| | ) | |
| Marlon Parris | ) | Charging District's |
| *Defendant* | ) | Case No.   CR10-1236 |

## COMMITMENT TO ANOTHER DISTRICT

The defendant has been ordered to appear in the _____ Central _____ District of _California_ ,

*(if applicable)* _____ division. The defendant may need an interpreter for this language:

_____ .

The defendant:  ☐ will retain an attorney.

                ☑ is requesting court-appointed counsel.

The defendant remains in custody after the initial appearance.

**IT IS ORDERED:** The United States marshal must transport the defendant, together with a copy of this order, to the charging district and deliver the defendant to the United States marshal for that district, or to another officer authorized to receive the defendant. The marshal or officer in the charging district should immediately notify the United States attorney and the clerk of court for that district of the defendant's arrival so that further proceedings may be promptly scheduled. The clerk of this district must promptly transmit the papers and any bail to the charging district.

Date:   _4/19/11_

                                _____
                                        *Judge's signature*

                                Kristen L. Mix
                                        *Printed name and title*

                                U.S. Magistrate Judge

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

1993086

| United States of America | | CASE NUMBER: |
| --- | --- | --- |
| | Plaintiff(s) | CR **CR10 1236** |
| v. | | |
| **MARLON PARRIS** aka "P" | Defendant(s) | **WARRANT FOR ARREST** 11-mj-01056-KLM |

TO:    UNITED STATES MARSHAL AND ANY AUTHORIZED UNITED STATES OFFICER

YOU ARE HEREBY COMMANDED to arrest  **MARLON PARRIS, aka "P"**
and bring him/her forthwith to the nearest Magistrate Judge to answer a(n): ☐ Complaint ■ Indictment
☐ Information    ☐ Order of Court    ☐ Probation Violation Petition    ☐ Violation Notice
charging him/her with: (ENTER DESCRIPTION OF OFFENSE BELOW)

**Conspiracy to Distribute Cocaine;**
**Conspiracy to Launder Money**

in violation of Title 21:18: United States Code, Section(s) 846:1956(h):

| Terry Nafisi | November 16, 2010    LOS ANGELES, CALIFORNIA |
| --- | --- |
| NAME OF ISSUING OFFICER | DATE AND LOCATION OF ISSUANCE |
| Clerk of Court | |
| TITLE OF ISSUING OFFICER | BY: STEPHEN J. HILLMAN |
| SIGNATURE OF DEPUTY CLERK | NAME OF JUDICIAL OFFICER |

### RETURN

THIS WARRANT WAS RECEIVED AND EXECUTED WITH THE ARREST OF THE ABOVE-NAMED DEFENDANT AT LOCATION:

| 4-14-11 | DUSM Walkington |
| --- | --- |
| DATE RECEIVED | NAME OF ARRESTING OFFICER |
| 4-14-11 | Deputy U.S. Marshal |
| DATE OF ARREST | TITLE |
| DESCRIPTIVE INFORMATION FOR DEFENDANT CONTAINED ON PAGE TWO | SIGNATURE OF ARRESTING OFFICER |

**WARRANT FOR ARREST**

CR-12 (07/04)                                                                PAGE 1 OF 2

FILED

2010 NOV 16  PM 2: 25

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY_____

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

September 2010 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR No. 1 **CR10 1236** |
| Plaintiff, | I N D I C T M E N T |
| v. | [21 U.S.C. § 846: Conspiracy to Distribute Cocaine; 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii): Possession With Intent to Distribute Cocaine; 18 U.S.C. § 924(c)(1)(A)(i): Possession of a Firearm in Furtherance of a Drug Trafficking Crime; 18 U.S.C. § 1956(h): Conspiracy to Launder Money; 18 U.S.C. §§ 1956(a)(1)(A)(i): Money Laundering; 21 U.S.C. § 853, 18 U.S.C. §§ 924(d), 982(a)(1), 28 U.S.C. § 2461(c): Criminal Forfeiture; 18 U.S.C. § 2(a): Aiding and Abetting] |
| RICKY JAMES BRASCOM, aka "DP," | |
| CHARLES DWIGHT RANSOM, JR., aka "CJ," aka "C," | |
| DARRIN EBRON, | |
| HERIBERTO LOPEZ, aka "The Boss," aka "BD," aka "Big Dog," aka "O.G.," | |
| LEONARDO CONCEPCION, aka "Leo," | |
| JEROME MONDALE BRASCOM, aka "Bro-Bro," | |
| MARLON PARRIS, aka "P," | |
| STEVEN VELAZQUEZ, | |
| ALBERTO CRUZADO, | |
| FNU LNU, aka "O.G.," | |
| FNU LNU, aka "S.O.," aka "S," | |

//
//
//
//
//

```
 1   FNU LNU,
          aka "M,"
 2   FNU LNU,
          aka "Cuzzo," and
 3   FNU LNU,
          aka "SM,"
 4
                    Defendants.
 5
```

 6   The Grand Jury charges:

 7                           COUNT ONE

 8                      [21 U.S.C. § 846]

 9   A.   OBJECT OF THE CONSPIRACY

10         Beginning on an unknown date and continuing until on or

11   about November 2, 2010, in Los Angeles and San Bernardino

12   Counties, within the Central District of California, and

13   elsewhere, defendants RICKY JAMES BRASCOM, also known as ("aka")

14   "DP" ("BRASCOM"), CHARLES DWIGHT RANSOM, JR., aka "CJ," aka "C"

15   ("RANSOM"), DARRIN EBRON ("EBRON"), HERIBERTO LOPEZ, aka "The

16   Boss," aka "BD," aka "Big Dog," aka "O.G." ("LOPEZ"), LEONARDO

17   CONCEPCION, aka "Leo" ("CONCEPCION"), JEROME MONDALE BRASCOM, aka

18   "Bro-Bro" ("J. BRASCOM"), MARLON PARRIS, aka "P" ("PARRIS"),

19   STEVEN VELAZQUEZ ("VELAZQUEZ"), ALBERTO CRUZADO ("CRUZADO"),

20   first name unknown ("FNU") last name unknown ("LNU"), aka "O.G."

21   ("O.G."), FNU LNU, aka "S.O.," aka "S" ("S.O."), FNU LNU, aka "M"

22   ("M"), FNU LNU, aka "Cuzzo" ("CUZZO"), and FNU LNU, aka "SM"

23   ("SM"), and others known and unknown to the Grand Jury, conspired

24   and agreed with each other to knowingly and intentionally

25   distribute at least five kilograms of a mixture and substance

26   containing a detectable amount of cocaine, a Schedule II narcotic

27   drug controlled substance, in violation of Title 21, United

28   States Code, Sections 841(a)(1) and 841(b)(1)(A)(ii).

                                2

B.    **MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE**
      **ACCOMPLISHED**

      The object of the conspiracy was to be accomplished in substance as follows:

      1.    Defendants BRASCOM and RANSOM would transport large shipments of cocaine from the Los Angeles area to Baltimore, Maryland, using chartered jet flights, for delivery to distributors in the Baltimore area.

      2.    Using chartered jet and commercial flights, defendants BRASCOM and RANSOM would then transport the cash proceeds generated from the sales of cocaine from Baltimore to the Los Angeles area.

      3.    Defendant LOPEZ would supply cocaine to defendant BRASCOM and loan defendant BRASCOM money to pay a drug debt with a different cocaine supplier.

      4.    Defendant BRASCOM would use part of the collected drug cash proceeds to pay defendant LOPEZ for past deliveries of cocaine.

      5.    Defendants J. BRASCOM and PARRIS would travel on the chartered jet flights with the cocaine, and deliver the cocaine to distributors in Baltimore, and then return with the cash proceeds generated from the sales of cocaine.

      6.    Defendant CONCEPCION would pilot the chartered jet flights that were used to transport cocaine and drug cash proceeds, and would advise defendant BRASCOM about when and how to fly the illegal shipments to avoid detection by law enforcement.

      7.    Defendants VELAZQUEZ and CRUZADO would store and deliver

3

1  cocaine for LOPEZ.

2      8.  Defendants EBRON, O.G., S.O., M, CUZZO, and S.M. would

3  sell the cocaine in Baltimore and return the collected drug cash

4  proceeds to defendant BRASCOM.

5  C.   OVERT ACTS

6      In furtherance of the conspiracy and to accomplish the

7  object of the conspiracy, on or about the following dates,

8  defendants BRASCOM, RANSOM, EBRON, LOPEZ, CONCEPCION, J. BRASCOM,

9  PARRIS, VELAZQUEZ, CRUZADO, O.G., S.O., M, CUZZO, and SM, and

10  others known and unknown to the Grand Jury, committed various

11  overt acts within the Central District of California, and

12  elsewhere, including but not limited to the following:

13           **Delivery of $1,245,000 in Drug Cash Proceeds**

14      1.  On September 20, 2010, at 6:19 p.m., using coded

15  language over the telephone, defendant J. BRASCOM told defendant

16  BRASCOM that he had collected drug cash proceeds and would meet

17  with defendant BRASCOM the next day before 3:00 p.m.

18      2.  On September 21, 2010, at 10:24 a.m., using coded

19  language over the telephone, defendant BRASCOM directed defendant

20  J. BRASCOM to pack the drug cash proceeds in suitcases and place

21  locks on them.

22      3.  On September 21, 2010, at 12:21 p.m., using coded

23  language over the telephone, defendant BRASCOM told defendant J.

24  BRASCOM that a courier for a drug distributor would arrive

25  shortly to drop off money to defendant J. BRASCOM.

26      4.  On September 21, 2010, at 1:00 p.m., using coded

27  language over the telephone, defendant BRASCOM asked defendant J.

28  BRASCOM how much money he had received from the courier for a

                                4

1  drug distributor in Baltimore because defendant BRASCOM had to

2  report the amount to defendant LOPEZ.

3      5.  On September 21, 2010, at 1:08 p.m., using coded

4  language over the telephone, defendant J. BRASCOM told defendant

5  BRASCOM that he still had to count the money delivered by the

6  courier.

7      6.  On September 21, 2010, in a series of text messages

8  beginning at 1:12 p.m., defendant BRASCOM confirmed that

9  defendant EBRON's courier had dropped off $200,000 on Sunday and

10  $115,000 that day, for a total of $315,000.

11      7.  On September 21, 2010, at 2:08 p.m., using coded

12  language over the telephone, defendant J. BRASCOM confirmed that

13  he was flying out after getting more drug money.

14      8.  On September 21, 2010, at 2:21 p.m., using coded

15  language over the telephone, defendant RANSOM arranged to meet

16  with defendants J. BRASCOM and BRASCOM before leaving Baltimore.

17      9.  On September 21, 2010, at 2:43 p.m., using coded

18  language over the telephone, defendant J. BRASCOM told defendant

19  BRASCOM that he finished packing the drug cash proceeds into the

20  suitcases, which he would deliver to defendant RANSOM.

21      10.  On September 21, 2010, at 6:30 p.m., using coded

22  language over the telephone, defendant J. BRASCOM told defendant

23  BRASCOM that defendant O.G. had given him roughly $270,000 but

24  was still short of the amount owed and that defendant O.G. wanted

25  to return a kilogram of cocaine for an unknown reason.

26      11.  On September 21, 2010, at 6:33 p.m., using coded

27  language over the telephone, defendant J. BRASCOM told defendant

28  BRASCOM that he had collected $660,000 from defendant S.O. (in

5

1  addition to the $315,000 from defendant EBRON's courier and

2  $270,000 from defendant O.G., totaling $1,245,000).

3      12.  On September 21, 2010, defendants BRASCOM and RANSOM

4  flew with the drug cash proceeds on a chartered flight from

5  Baltimore to Los Angeles.

6      13.  On September 21, 2010, defendant LOPEZ went to

7  defendant BRASCOM's apartment complex on Yucca Street, in

8  Hollywood, California, to pick up the collected drug cash

9  proceeds.

10              **Drug Flight With 48 Kilograms of Cocaine**

11      14.  On September 27, 2010, at 12:52 p.m., using coded

12  language over the telephone, defendant BRASCOM arranged for

13  defendant RANSOM to meet with one of defendant BRASCOM's cocaine

14  suppliers to receive cocaine for defendant BRASCOM.

15      15.  On September 27, 2010, at 1:59 p.m., using coded

16  language over the telephone, defendant BRASCOM told defendant

17  RANSOM that one of his cocaine suppliers had agreed to provide a

18  small load of cocaine and that he wanted defendant RANSOM to meet

19  with them.

20      16.  On September 27, 2010, at 3:17 p.m., using coded

21  language over the telephone, defendant BRASCOM told defendant

22  RANSOM that he arranged a chartered jet flight for defendant

23  RANSOM departing at 5:00 a.m. the next morning from Ontario

24  International Airport.

25      17.  On September 27, 2010, at 7:11 p.m., using coded

26  language over the telephone, defendant BRASCOM told defendant

27  RANSOM that his cocaine supplier was going to be at the meeting

28  location with the cocaine in one hour.

1      18.   On September 27, 2010, at 8:46 p.m., defendant RANSOM

2  met with one of defendant BRASCOM's cocaine suppliers in the

3  underground parking garage at defendant BRASCOM's apartment

4  complex on Yucca Street, in Hollywood, California.

5      19.   On September 27, 2010, at 9:26 p.m., using coded

6  language over the telephone, defendant RANSOM confirmed that he

7  had received 18 kilograms of cocaine from one of defendant

8  BRASCOM's cocaine suppliers.

9      20.   On September 28, 2010, at 5:15 a.m., at the Ontario

10  International Airport, defendant RANSOM and a female boarded a

11  chartered jet to Baltimore, Maryland.

12      21.   On September 28, 2010, at 8:30 a.m., during a refueling

13  stop at the Salina Municipal Airport in Salina, Kansas, defendant

14  RANSOM possessed 48 kilograms of cocaine concealed in two hard-

15  sided suitcases in the cabin of the aircraft.

16      22.   On September 28, 2010, at 12:40 p.m., using coded

17  language over the telephone, defendant RANSOM told defendant

18  BRASCOM that during a random inspection in Kansas, the police had

19  taken the suitcases after he had said they did not belong to him.

20      23.   On September 28, 2010, at 12:43 p.m., using coded

21  language over the telephone, defendants BRASCOM and RANSOM

22  discussed why defendant RANSOM was not arrested in Kansas

23  following the seizure of the cocaine defendant RANSOM possessed

24  and the money they owed for the loss of the seized cocaine.

25                    **Delivery of 40 Kilograms of Cocaine**

26      24.   On September 28, 2010, at 5:11 p.m., using coded

27  language over the telephone, defendant EBRON told defendant

28  BRASCOM that he thought he received 30 kilograms of cocaine from

7

1   defendant BRASCOM, while defendant BRASCOM insisted that

2   defendant EBRON received 40 kilograms of cocaine during the

3   transaction in question.

4        25.   On September 28, 2010, at 5:18 p.m., using coded

5   language over the telephone, defendant EBRON told defendant

6   BRASCOM that he received 40 kilograms of cocaine from defendant

7   BRASCOM, that he now owed defendant BRASCOM $900,000, and that he

8   would pay most of the debt the next time he saw defendant

9   BRASCOM.

10                 **Delivery of 118 Kilograms of Cocaine**

11       26.   On September 30, 2010, defendant J. BRASCOM flew from

12  Colorado Springs, Colorado, to Baltimore.

13       27.   On October 1, 2010, at 12:07 p.m., using coded language

14  over the telephone, defendant BRASCOM instructed defendant J.

15  BRASCOM to deliver the cocaine and store the drug proceeds in a

16  storage location, and defendant BRASCOM told defendant J. BRASCOM

17  to pay defendant PARRIS $2,000 for escorting a drug load to

18  Baltimore and another $2,000 when defendant PARRIS flew back to

19  Los Angeles with the drug proceeds.

20       28.   On October 1, 2010, at 12:16 p.m., using coded language

21  over the telephone, defendant BRASCOM told defendant PARRIS that

22  defendant LOPEZ would give him a cell phone to use to contact

23  defendants BRASCOM and LOPEZ, and that after defendant PARRIS met

24  with defendant LOPEZ, defendant BRASCOM would provide defendant

25  PARRIS with details about the flight defendant PARRIS would be

26  taking to deliver cocaine from Los Angeles to Baltimore.

27       29.   On October 1, 2010, at 12:31 p.m., using coded language

28  over the telephone, defendant BRASCOM instructed defendant J.

                                    8

1  BRASCOM to purchase a container to store the collected drug cash

2  proceeds until the cash was flown to Los Angeles.

3       30.  On October 1, 2010, at 2:24 p.m., using coded language

4  over the telephone, defendant BRASCOM told defendant PARRIS that

5  defendant LOPEZ was coming over to see him.

6       31.  On October 1, 2010, in a series of text messages

7  starting at 3:02 p.m., defendant BRASCOM instructed his limousine

8  driver to pick up luggage containing the cocaine from defendant

9  BRASCOM's residence at 7:00 p.m. and deliver it to the Van Nuys

10  Airport, then drive defendant PARRIS to the Atlantic Terminal at

11  the Los Angeles International Airport ("LAX").

12       32.  On October 1, 2010, in a series of text messages

13  starting at 3:13 p.m., defendant BRASCOM asked defendant PARRIS

14  for his full name to arrange his travel by chartered flight to

15  Baltimore.

16       33.  On October 1, 2010, at 3:47 p.m., using coded language

17  over the telephone, defendant BRASCOM asked defendant PARRIS

18  about defendant LOPEZ, who gave defendant PARRIS a cell phone.

19       34.  On October 1, 2010, at 5:43 p.m., using coded language

20  over the telephone, defendant BRASCOM told his limousine driver

21  to pick up the luggage (which contained cocaine) from his house

22  and give it to defendant CONCEPCION at the Van Nuys Airport, then

23  take defendant PARRIS and a female to the Atlantic Terminal at

24  LAX because defendant CONCEPCION would fly from the Van Nuys

25  Airport to LAX to meet them.

26       35.  On October 1, 2010, at 8:39 p.m., using coded language

27  over the telephone, defendant BRASCOM instructed defendant J.

28  BRASCOM to arrange limousine service for defendant PARRIS when he

9

1  arrived with the cocaine shipment at the airport in Baltimore,

2  and defendant BRASCOM told defendant J. BRASCOM that he and

3  defendant PARRIS should wait for defendant BRASCOM's instructions

4  concerning the delivery of the cocaine.

5       36.  On October 1, 2010, in a series of text messages

6  starting at 8:48 p.m., defendant BRASCOM learned from the

7  limousine driver that he had dropped off the luggage containing

8  cocaine at the chartered jet at the Van Nuys Airport and was

9  taking defendant PARRIS and a female to LAX.

10      37.  On October 1, 2010, at 10:43 p.m., defendant PARRIS and

11 a female flew from LAX to Baltimore on a chartered jet flight

12 piloted by defendant CONCEPCION.

13      38.  On October 2, 2010, at 3:59 a.m., using coded language

14 over the telephone, defendant BRASCOM instructed defendant J.

15 BRASCOM to deliver 20 kilograms of cocaine to defendant M, 18

16 kilograms of cocaine to defendant CUZZO, and 80 kilograms of

17 cocaine to SM.

18 **$240,060 in Drug Cash Proceeds Transported by Commercial Flight**

19      39.  On October 7, 2010, at 12:04 p.m., using coded language

20 over the telephone, defendant J. BRASCOM told defendant BRASCOM

21 that he was sending money to defendant BRASCOM on a commercial

22 flight to help defendant BRASCOM pay his supplier for 18 of the

23 48 kilograms that were seized from defendant RANSOM in Salina,

24 Kansas, on September 28, 2010.

25      40.  On October 7, 2010, in a series of text messages

26 starting at 12:21 p.m., defendant BRASCOM arranged for his

27 limousine driver to pick up defendant PARRIS from the Burbank

28 Airport when he arrived with the cash that defendant J. BRASCOM

1   was sending to defendant BRASCOM.

2       41.  On October 7, 2010, at 1:26 p.m., using coded language
3   over the telephone, defendant J. BRASCOM told defendant BRASCOM
4   that he had dropped defendant PARRIS off at the airport with the
5   cash in a suitcase.

6       42.  On October 7, 2010, at 1:32 p.m., using coded language
7   over the telephone, defendant J. BRASCOM told defendant BRASCOM
8   that defendant PARRIS had been released after he was questioned
9   about the cash in his suitcase when he went through a security
10  screening area at the Denver International Airport.

11      43.  On October 7, 2010, at 3:58 p.m., using coded language
12  over the telephone, defendant BRASCOM told defendant J. BRASCOM
13  to count the cash that he was sending to defendant BRASCOM
14  because he did not have time to do it before he delivered it to
15  defendant LOPEZ.

16      44.  On October 7, 2010, at 3:50 p.m., using coded language
17  over the telephone, defendant PARRIS told defendant BRASCOM that
18  he had arrived in Phoenix, Arizona.

19      45.  On October 7, 2010, defendant PARRIS possessed $240,060
20  in drug cash proceeds in his carry-on suitcase when he arrived at
21  the Phoenix International Airport.

22      46.  On October 7, 2010, at 4:46 p.m., defendant BRASCOM
23  told a Phoenix police detective that defendant PARRIS was
24  bringing the money contained in defendant PARRIS' suitcase out to
25  him to purchase an Aston Martin sports car.

26      47.  On October 7, 2010, at 4:49 p.m., using coded language
27  over the telephone, defendant BRASCOM told defendant J. BRASCOM
28  that the police had stopped defendant PARRIS, but he felt that

11

1  his explanation to them had been accepted and that the police
2  were not going to seize the money.

3        48.  On October 7, 2010, at 5:12 p.m., using coded language
4  over the telephone, defendant J. BRASCOM advised defendant
5  BRASCOM that if the police did let defendant PARRIS go, that
6  defendant BRASCOM should not be seen with him and should get
7  defendant PARRIS a hotel room.

8        49.  On October 7, 2010, at 6:25 p.m., using coded language
9  over the telephone, defendant J. BRASCOM informed defendant
10  BRASCOM that the police had released defendant PARRIS but had
11  seized the money.

12        50.  On October 7, 2010, at 6:27 p.m., using coded language
13  over the telephone, defendant PARRIS told defendant BRASCOM that
14  the police had seized the cash in his suitcase and that defendant
15  BRASCOM should get rid of his cell phone, as defendant PARRIS had
16  cleared the cell phone that defendant LOPEZ had given him before
17  the police could examine it.

18        51.  On October 7, 2010, at 6:36 p.m., using coded language
19  over the telephone, defendant BRASCOM told defendant PARRIS that
20  he would get him a hotel room when he arrived in Burbank and that
21  defendant BRASCOM planned to get rid of his cell phone.

22        52.  On October 7, 2010, at 6:49 p.m., using coded language
23  over the telephone, defendant BRASCOM informed defendant J.
24  BRASCOM that since he needed cash from defendant LOPEZ to pay his
25  other supplier for the seized cocaine, defendant BRASCOM had to
26  tell defendant LOPEZ about using a different supplier and the
27  seizure of the cocaine and cash.

28        53.  On October 11, 2010, at 10:48 p.m., using coded

1   language over the telephone, defendant RANSOM told defendant

2   BRASCOM that his supplier was demanding payment for the seized

3   cocaine, and defendant BRASCOM informed defendant RANSOM that he

4   had borrowed $320,000 from defendant LOPEZ to pay his supplier

5   for the seized cocaine.

6              **Defendant EBRON's Meeting with Defendants**

7              **BRASCOM and LOPEZ to Discuss Drug Debt**

8       54.  On October 13, 2010, at 7:56 p.m., using coded language

9   over the telephone, defendant EBRON told defendant BRASCOM that

10  he was in Los Angeles and was ready to meet the following

11  morning.

12      55.  On October 14, 2010, at 11:26 a.m., using coded

13  language over the telephone, defendant EBRON asked defendant

14  BRASCOM to arrange a meeting with defendant LOPEZ because

15  defendant EBRON felt he owed $50,000 less than what defendant

16  LOPEZ felt that defendant EBRON owed, and defendant EBRON told

17  defendant BRASCOM that he was ready for another shipment of

18  cocaine.

19      56.  On October 14, 2010, at 1:45 p.m., using coded language

20  over the telephone, defendant BRASCOM told defendant EBRON that

21  he was meeting with defendant LOPEZ.

22      57.  On October 14, 2010, at 1:47 p.m., using coded language

23  over the telephone, defendant BRASCOM told defendant EBRON to

24  meet him at the Jerry's Deli restaurant at the corner of Ventura

25  Boulevard and Topanga Boulevard.

26      58.  On October 14, 2010, at 3:55 p.m., defendant EBRON met

27  with defendants LOPEZ and BRASCOM at the Jerry's Deli restaurant

28  in Los Angeles, California.

13

1         <u>Attempted Delivery of 118.8 Kilograms of Cocaine</u>

2       59.  On October 24, 2010, at 1:53 p.m., using coded language

3 over the telephone, defendant BRASCOM told defendant CONCEPCION

4 that defendant LOPEZ wanted them to take a cocaine shipment that

5 was ready to go on Wednesday and then do another trip on the

6 weekend.

7      60.  On October 24, 2010, at 8:57 p.m., using coded language

8 over the telephone, defendant CONCEPCION called defendant BRASCOM

9 to discuss the upcoming drug flight, but was interrupted by a

10 call from defendant LOPEZ to defendant BRASCOM.

11      61.  On October 24, 2010, at 9:01 p.m., using coded language

12 over the telephone, defendants CONCEPCION and BRASCOM discussed

13 how they would fly two loads of cocaine to Baltimore and bring

14 back the collected drug money, and how it would be unwise to fly

15 in the morning, which defendant BRASCOM felt led to the seizure

16 of the cocaine from defendant RANSOM in Salina, Kansas, on

17 September 28, 2010.

18      62.  On October 30, 2010, at 11:12 a.m., using coded

19 language over the telephone, defendant BRASCOM told defendant

20 EBRON that he was sending a shipment of cocaine to Baltimore and

21 asked defendant EBRON to have the money for the cocaine ready,

22 and defendant EBRON told defendant BRASCOM that his drug runner

23 would be ready at 7:00 a.m.

24      63.  On October 30, 2010, at 12:58 p.m., using coded

25 language over the telephone, defendants CONCEPCION and BRASCOM

26 discussed whether to break up the cocaine shipment because the

27 aircraft that was available could fit only two suitcases with

28 cocaine into the aircraft compartment.

14

1    64.  On October 30, 2010, at 1:06 p.m., using coded language

2  over the telephone, defendants CONCEPCION and BRASCOM agreed that

3  defendant BRASCOM would try to fit three suitcases worth of

4  cocaine into two suitcases, and defendant CONCEPCION stated that

5  he would avoid the refueling point in Salina, Kansas, where

6  defendant RANSOM had gotten into trouble.

7    65.  On October 30, 2010, defendants VELAZQUEZ and CRUZADO

8  stayed at a Motel 6 in Sylmar, California, and were driving a

9  white Toyota Avalon (the "Toyota Avalon").

10    66.  On October 30, 2010, defendants VELAZQUEZ and CRUZADO

11  drove to Storage Direct in Chatsworth, California, went inside

12  storage unit 35B, and then left the storage facility.

13    67.  On October 30, 2010, at 5:10 p.m., defendant LOPEZ, in

14  a black Ford F350 truck (the "Ford truck"), drove in tandem with

15  the Toyota Avalon, then stopped at the side of the road and spoke

16  to defendants VELAZQUEZ and CRUZADO.

17    68.  On October 30, 2010, at 5:47 p.m., defendants VELAZQUEZ

18  and CRUZADO returned to storage unit 35B at Storage Direct and

19  removed three heavy suitcases, which were loaded into the trunk

20  and back seat of the Toyota Avalon.

21    69.  On October 30, 2010, at 6:31 p.m., defendant CRUZADO,

22  the passenger in the Toyota Avalon, locked the door and placed a

23  cell phone call when a police officer approached the passenger

24  door during a traffic stop.

25    70.  On October 30, 2010, defendant LOPEZ, now driving a GMC

26  Denali, drove by the traffic stop of the Toyota Avalon.

27    71.  On October 30, 2010, defendants CRUZADO and VELAZQUEZ

28  possessed 118.8 kilograms of cocaine in the three suitcases that

15

1 they had loaded into the Toyota Avalon, as well as $9,900 in

2 cash.

3     72.  On October 30, 2010, in storage unit 35B at Storage

4 Direct, defendants CRUZADO and VELAZQUEZ possessed 30 kilograms

5 of cocaine in a suitcase next to a box containing the following

6 firearms (and ammunition in the box and nearby safe): a Smith &

7 Wesson .40 caliber pistol, serial no. PBT3283; an Intratec Tec 9,

8 9mm pistol, serial no. D054444; a Beretta 9mm pistol, serial no.

9 BER319577; a Smith & Wesson .45 caliber pistol, serial no.

10 BAM0039; a N.A. Arms .32 caliber pistol, serial no. AD02797; a

11 Beretta .25 caliber pistol, serial no. DAA330919; a N.A. Arms .22

12 caliber pistol, serial no. E079318; a Mossberg pistol grip

13 shotgun (with butt removed), serial no. P925595; a Stoeger

14 double-barrel shotgun, serial no. 515361-03; and a Par-1 7.62

15 rifle, serial no. P1-01255-2002.

16     73.  On October 30, 2010, at 7:37 p.m., using coded language

17 over the telephone, defendant BRASCOM told defendant RANSOM that

18 defendant LOPEZ's couriers (defendants VELAZQUEZ and CRUZADO) had

19 been arrested.

20     74.  On October 30, 2010, at 10:17 p.m., using coded

21 language over the telephone, defendant BRASCOM told an

22 unidentified female that the cocaine had been seized from

23 defendant LOPEZ's drug couriers.

24     75.  On October 31, 2010, at 10:19 a.m., using coded

25 language over the telephone, defendant EBRON told defendant

26 BRASCOM that his courier had been waiting since 7:00 a.m. for the

27 cocaine shipment and had the money to purchase the cocaine with

28 him.

16

1              **Shipment of 34 Kilograms of Cocaine and**

2                **Return Flight with Cash for Cocaine**

3         76.   On October 30, 2010, at 9:32 p.m., using coded language

4    over the telephone, defendant BRASCOM told defendant RANSOM that

5    he had set up a flight with defendant CONCEPCION for the next day

6    and that a different cocaine supplier would be ready at 2:00 p.m.

7    to deliver the cocaine that would be shipped on this flight.

8         77.   On October 31, 2010, at 11:06 a.m., using coded

9    language over the telephone, defendant BRASCOM told defendant

10   CONCEPCION that he was trying to set up a cocaine shipment that

11   evening but that he did not have anyone to escort the shipment on

12   the flight.

13        78.   On October 31, 2010, at 4:42 p.m., using coded language

14   over the telephone, defendant BRASCOM instructed his limousine

15   driver to pick up luggage containing cocaine from defendant

16   RANSOM and deliver it to defendant J. BRASCOM, who would arrive

17   on the aircraft flown by defendant CONCEPCION, and defendant J.

18   BRASCOM would in turn give the limousine driver luggage with drug

19   cash proceeds to deliver to defendant BRASCOM.

20        79.   On October 31, 2010, at 6:00 p.m., using coded language

21   over the telephone, defendant BRASCOM told defendant RANSOM that

22   the drug courier had arrived to deliver cocaine to defendant

23   RANSOM.

24        80.   On October 31, 2010, at 6:15 p.m., using two cell

25   phones, defendant BRASCOM arranged for defendant RANSOM to meet

26   the drug courier who had arrived with the cocaine.

27        81.   On October 31, 2010, at 8:27 p.m., using coded language

28   over the telephone, defendant RANSOM told defendant BRASCOM that

                                  17

1   he had received 34 kilograms of cocaine from the courier.

2        82.   On October 31, 2010, in a series of text messages

3   starting at 9:45 p.m., defendant BRASCOM learned from the

4   limousine driver that he had picked up the luggage from defendant

5   RANSOM and would take it to the airport to meet defendants

6   CONCEPCIÓN and J. BRASCOM.

7        83.   On October 31, 2010, in a series of text messages

8   starting at 11:04 p.m., defendant BRASCOM learned from the

9   limousine driver that the plane piloted by defendant CONCEPCION

10   had landed and that he was now on his way back to deliver the

11   suitcase that defendant J. BRASCOM had given to him.

12        84.   On November 1, 2010, at 11:38 p.m., using coded

13   language over the telephone, defendant BRASCOM told defendant

14   RANSOM that he arranged to be paid for the entire load of cocaine

15   that was sent out the night before and that the money could be

16   brought back on a flight that night.

17        85.   On November 1, 2010, at 11:49 a.m., using coded

18   language over the telephone, defendants BRASCOM and CONCEPCION

19   discussed future cocaine shipments and the need for defendant

20   BRASCOM to use another supplier because defendant LOPEZ was

21   scared as a result of the recent cocaine seizure.

22        86.   On November 1, 2010, at 11:49 a.m., using coded

23   language over the telephone, defendant CONCEPCION told defendant

24   BRASCOM that he did not want to fly the drug proceeds from the

25   previous night's cocaine shipment until later that evening to

26   avoid law enforcement.

27        87.   On November 1, 2010, at 4:41 p.m., using coded language

28   over the telephone, defendant CONCEPCION told defendant BRASCOM

1   that he was going to fly defendant J. BRASCOM back from Baltimore

2   with the drug proceeds, and defendant CONCEPCION asked to be paid

3   by defendant J. BRASCOM with the drug proceeds on the plane,

4        88.   On November 2, 2010, defendants CONCEPCION and J.

5   BRASCOM landed at the Ontario International Airport at 1:00 a.m.

6        89.   On November 2, 2010, defendant J. BRASCOM possessed

7   $763,815 in drug cash proceeds in a suitcase and $24,366.50 in

8   drug cash proceeds in a backpack.

9        90.   On November 2, 2010, defendant CONCEPCION possessed

10   $40,000 in drug cash proceeds in the microwave oven in the

11   aircraft he had flown, and $26,060 in drug cash proceeds in a

12   Mazda mini-van.

13        91.   On November 2, 2010, defendant RANSOM possessed a Glock

14   32, .357 caliber pistol, with the serial number removed, and

15   loaded with 10 rounds of ammunition, in his bedroom night stand

16   at his residence on Yucca Street, in Los Angeles, California.

17

18

19

20

21

22

23

24

25

26

27

28

19

COUNT TWO

[21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii), 18 U.S.C. § 2(a)]

On or about October 30, 2010, in Los Angeles County, within the Central District of California, defendants STEVEN VELAZQUEZ and ALBERTO CRUZADO knowingly and intentionally possessed with intent to distribute at least five kilograms, that is, approximately 118.8 kilograms, of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance.

At the above time and place, defendants RICKY JAMES BRASCOM, also known as ("aka") "DP," and HERIBERTO LOPEZ, aka "The Boss," aka "BD," aka "Big Dog," aka "O.G.," knowingly and intentionally aided, abetted, counseled, commanded, induced, and procured the commission of the offense alleged above.

1                        COUNT THREE

2     [21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii); 18 U.S.C. § 2(a)]

3        On or about October 30, 2010, in Los Angeles County, within

4 the Central District of California, defendants STEVEN VELAZQUEZ

5 and ALBERTO CRUZADO knowingly and intentionally possessed with

6 intent to distribute at least five kilograms, that is,

7 approximately 30 kilograms, of a mixture and substance containing

8 a detectable amount of cocaine, a Schedule II narcotic drug

9 controlled substance.

10       At the above time and place, defendant HERIBERTO LOPEZ, also

11 known as ("aka") "The Boss," aka "BD," aka "Big Dog," aka "O.G.,"

12 knowingly and intentionally aided, abetted, counseled, commanded,

13 induced, and procured the commission of the offense alleged

14 above.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
## COUNT FOUR

2
[18 U.S.C. § 924(c)(1)(A)(i)]

3         On or about October 30, 2010, in Los Angeles County, within

4    the Central District of California, defendants HERIBERTO LOPEZ,

5    also known as ("aka") "The Boss," aka "BD," aka "Big Dog," aka

6    "O.G.," STEVEN VELAZQUEZ, and ALBERTO CRUZADO knowingly used and

7    carried firearms, namely, a Smith & Wesson .40 caliber pistol,

8    serial no. PBT3283; an Intratec Tec 9, 9mm pistol, serial no.

9    D054444; a Beretta 9mm pistol, serial no. BER319577; a Smith &

10   Wesson .45 caliber pistol, serial no. BAM0039; a N.A. Arms .32

11   caliber pistol, serial no. AD02797; a Beretta .25 caliber pistol,

12   serial no. DAA330919; a N.A. Arms .22 caliber pistol, serial no.

13   E079318; a Mossberg pistol grip shotgun (with butt removed),

14   serial no. P925595; a Stoeger double-barrel shotgun, serial no.

15   515361-03; and a Par-1 7.62 rifle, serial no. P1-01255-2002,

16   during and in relation to, and possessed those firearms in

17   furtherance of, a drug trafficking crime, namely, conspiracy to

18   distribute cocaine, in violation of Title 21, United States Code,

19   Section 846, as charged in Count One of this Indictment, and

20   possession with intent to distribute cocaine, in violation of

21   Title 21, United States Code, Section 841(a)(1), as charged in

22   Counts Two and Three of this Indictment.

23

24

25

26

27

28

22

1                              COUNT FIVE

2                        [18 U.S.C. § 924(c)(1)(A)(i)]

3          On or about November 2, 2010, in Los Angeles County, within

4    the Central District of California, defendant CHARLES DWIGHT

5    RANSOM, JR., also known as ("aka") "CJ," aka "C," knowingly used

6    and carried a firearm, namely, a Glock 32, .357 caliber pistol,

7    with the serial number removed, during and in relation to, and

8    possessed that firearm in furtherance of, a drug trafficking

9    crime, namely, conspiracy to distribute cocaine, in violation of

10   Title 21, United States Code, Section 846, as charged in Count

11   One of this Indictment.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    23

1                          COUNT SIX

2                      [18 U.S.C. § 922(g)(1)]

3          On or about November 2, 2010, in Los Angeles County, within

4   the Central District of California, defendant CHARLES DWIGHT

5   RANSOM, JR., also known as ("aka") "CJ," aka "C" ("RANSOM")

6   knowingly possessed a firearm, namely, a Glock 32, .357 caliber

7   pistol, with the serial number removed, and ammunition, namely,

8   10 rounds of .357 caliber ammunition, in and affecting interstate

9   and foreign commerce.

10         Such possession occurred after defendant RANSOM had been

11  convicted of a felony punishable by a term of imprisonment

12  exceeding one year, namely, Conspiracy to Distribute Cocaine, in

13  violation of Title 21, United States Code, Section 846, in the

14  United States District Court for the Central District of

15  California, case number CR 03-701-RMT, on or about June 7, 2004.

16

17

18

19

20

21

22

23

24

25

26

27

28

                                  24

1                              COUNT SEVEN

2                            [18 U.S.C. § 1956(h)]

3   A.    OBJECTS OF THE CONSPIRACY

4         Beginning on an unknown date and continuing until on or

5   about November 2, 2010, in Los Angeles and San Bernardino

6   Counties, within the Central District of California, and

7   elsewhere, defendants RICKY JAMES BRASCOM, also known as ("aka")

8   "DP" ("BRASCOM"), CHARLES DWIGHT RANSOM, JR., aka "CJ," aka "C"

9   ("RANSOM"), DARRIN EBRON ("EBRON"), HERIBERTO LOPEZ, aka "The

10  Boss," aka "BD," aka "Big Dog," aka "O.G." ("LOPEZ"), LEONARDO

11  CONCEPCION, aka "Leo" ("CONCEPCION"), JEROME MONDALE BRASCOM, aka

12  "Bro-Bro" ("J. BRASCOM"), MARLON PARRIS, aka "P" ("PARRIS"),

13  STEVEN VELAZQUEZ ("VELAZQUEZ"), ALBERTO CRUZADO ("CRUZADO"),

14  first name unknown ("FNU") last name unknown ("LNU"), aka "O.G."

15  ("O.G."), FNU LNU, aka "S.O.," aka "S" ("S.O."), FNU LNU, aka "M"

16  ("M"), FNU LNU, aka "Cuzzo" ("CUZZO"), and FNU LNU, aka "SM"

17  ("SM"), and others known and unknown to the Grand Jury, conspired

18  and agreed with each other to knowingly and intentionally commit

19  offenses against the United States, namely:

20        Knowing that property involved in financial transactions

21  represented the proceeds of some form of unlawful activity, and

22  which property was, in fact, the proceeds of specified unlawful

23  activity, that is, conspiracy to distribute cocaine, in violation

24  of Title 21, United States Code, Section 846, conducted and

25  attempted to conduct financial transactions (1) with the intent

26  to promote the carrying on of said specified unlawful activity,

27  in violation of Title 18, United States Code, Section

28  1956(a)(1)(A)(i); and (2) knowing that the transactions were

                                  25

1    designed in whole and in part to conceal and disguise the nature,

2    the location, the source, the ownership, and the control of the

3    proceeds of said specified unlawful activity, in violation of

4    Title 18, United States Code, Section 1956(a)(1)(B)(i).

5    B.    MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE

6         ACCOMPLISHED

7         The objects of the conspiracy were to be accomplished in

8    substance as follows:

9         1-8.  The Grand Jury re-alleges and incorporates by

10   reference as if fully set forth herein paragraphs 1 through 8,

11   Section B, of Count One, setting forth the means of the

12   conspiracy charged in Count One.

13   C.    OVERT ACTS

14        In furtherance of the conspiracy and to accomplish the

15   objects of the conspiracy, on or about the following dates,

16   defendants BRASCOM, RANSOM, EBRON, LOPEZ, CONCEPCION, J. BRASCOM,

17   PARRIS, VELAZQUEZ, CRUZADO, O.G., S.O., M, CUZZO, and S.M., and

18   others known and unknown to the Grand Jury, committed various

19   overt acts within the Central District of California, and

20   elsewhere, including but not limited to the following:

21        1-91.  The Grand Jury re-alleges and incorporates by

22   reference as if fully set forth herein paragraphs 1 through 91,

23   Section C, of Count One, setting forth the overt acts of the

24   conspiracy charged in Count One.

25

26

27

28

1    CRIMINAL FORFEITURE

2    [21 U.S.C. § 853]

3         1.    Pursuant to Title 21, United States Code, Section

4    853(a), defendants RICKY JAMES BRASCOM, also known as ("aka")

5    "DP," CHARLES DWIGHT RANSOM, JR., aka "CJ," aka "C," DARRIN

6    EBRON, HERIBERTO LOPEZ, aka "The Boss," aka "BD," aka "Big Dog,"

7    aka "O.G.," LEONARDO CONCEPCION, aka "Leo," JEROME MONDALE

8    BRASCOM, aka "Bro-Bro," MARLON PARRIS, aka "P," STEVEN VELAZQUEZ,

9    ALBERTO CRUZADO, first name unknown ("FNU") last name unknown

10   ("LNU"), aka "O.G.," FNU LNU, aka "S.O.," aka "S," FNU LNU, aka

11   "M," FNU LNU, aka "Cuzzo," and FNU LNU, aka "SM," shall forfeit

12   to the United States the following property:

13              a.    All right, title, and interest in --

14                    (i)   any and all property constituting, or derived

15                          from, any proceeds obtained, directly or

16                          indirectly, as a result of the offenses

17                          described in Counts One through Three;

18                    (ii)  any property, real or personal, used, or

19                          intended to be used, in any manner or part,

20                          to commit, or to facilitate the commission

21                          of, such offenses; and

22                    (iii) any property, real or personal, involved in

23                          such offenses, or traceable to such property.

24              b.    A sum of money equal to the total value of the

25                    property described in paragraphs 1(a)(i), (ii),

26                    and (iii).  If more than one defendant is

27                    convicted of an offense, the defendants so

28                    convicted are jointly and severally liable for the

                                    27

1        amount involved in such offense.

2        2.   Pursuant to Title 21, United States Code, Section

3 853(p), each defendant shall forfeit substitute property, up to

4 the value of the total amount described in paragraph 1(a), if, as

5 the result of any act or omission of said defendant, said

6 property, or any portion thereof, cannot be located upon the

7 exercise of due diligence; has been transferred, sold to, or

8 deposited with a third party; has been placed beyond the

9 jurisdiction of the court; has been substantially diminished in

10 value; or has been commingled with other property that cannot be

11 divided without difficulty. .

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CRIMINAL FORFEITURE

[18 U.S.C. § 982(a)(1)]

1.   Count Seven of this Indictment alleges acts or
activities constituting an offense involving a conspiracy to
launder money, committed in violation of 18 U.S.C. § 1956(h).
Pursuant to Title 18, United States Code, Section 982, each
defendant who is convicted of such an offense shall forfeit to
the United States any right, title, and interest in any property,
real or personal, involved in such offense, or any property
traceable to such property, including, but not limited to:

      a.    (i)   $763,815 in U.S. currency;

          (ii)  $24,366.50 in U.S. currency;

          (iii) $40,000 in U.S. currency; and

          (iv)  $26,060 in U.S. currency.

      b.    A sum of money equal to the total value of the
property described in paragraph 1(a)(i) through (iv), inclusive.

2.   Pursuant to Title 21, United States Code, Section
853(p), each defendant shall forfeit substitute property, up to
the value of the total amount described in paragraph 1(a), if, as
the result of any act or omission of said defendant, said
property, or any portion thereof, cannot be located upon the
exercise of due diligence; has been transferred, sold to, or
deposited with a third party; has been placed beyond the
jurisdiction of the court; has been substantially diminished in
value; or has been commingled with other property that cannot be
divided without difficulty.

29

1                        CRIMINAL FORFEITURE

2                  [18 U.S.C. § 924(d); 28 U.S.C. § 2461(c)]

3          1.    The allegations contained in Counts One through Seven

4    of this Indictment are hereby repeated, re-alleged, and

5    incorporated by reference herein as though fully set forth at

6    length for the purpose of alleging forfeiture pursuant to the

7    provisions of Title 18, United States Code, Section 924(d), and

8    Title 28, United States Code, Section 2461(c).  Pursuant to Rule

9    32.2 of the Federal Rules of Criminal Procedure, notice is hereby

10   given to the defendants that the United States will seek

11   forfeiture as part of any sentence in accordance with said

12   statutes.

13         2.    Upon conviction of one or more of the offenses alleged

14   in Counts One through Seven of this Indictment, any such

15   convicted defendant shall forfeit to the United States all

16   firearms and ammunition involved or used in the commission of

17   such offense(s), including but not limited to the following: a

18   Smith & Wesson .40 caliber pistol, serial no. PBT3283; an

19   Intratec Tec-9, 9mm pistol, serial no. D054444; a Beretta 9mm

20   pistol, serial no. BER319577; a Smith & Wesson .45 caliber

21   pistol, serial no. BAM0039; a N.A. Arms .32 caliber pistol,

22   serial no. AD02797; a Beretta .25 caliber pistol, serial no.

23   DAA330919; a N.A. Arms .22 caliber pistol, serial no. E079318; a

24   Mossberg pistol grip shotgun (with butt removed), serial no.

25   P925595; a Stoeger double-barrel shotgun, serial no. 515361-03; a

26   //

27   //

28   //

                                    30

1 | Par-1 7.62 rifle, serial no. P1-01255-2002; and a Glock 32, .357

2 | caliber pistol with the serial number removed.

3 |

4 | A TRUE BILL

5 |

6 | /s/

7 | Foreperson

8 | ANDRÉ BIROTTE JR.

9 | United States Attorney

10 | *signature*

11 | ROBERT E. DUGDALE
Assistant United States Attorney

12 | Chief, Criminal Division

13 | RODRIGO A. CASTRO-SILVA
Assistant United States Attorney
Chief, Organized Crime Drug Enforcement

14 | Task Force Section

15 | ROB B. VILLEZA
Assistant United States Attorney

16 | Deputy Chief, Organized Crime Drug Enforcement
Task Force Section

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

31